IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Park Place Corporation, ) | |
| ) | C.A. No. 6:06-cv-02205-HMH |
| Plaintiff, ) | |
| ) | **OPINION AND ORDER** |
| vs. ) | |
| ) | |
| Industries P.F., Inc. and Jones Frame, ) | |
| Inc., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on Jones Frame, Inc.'s ("Jones Frame") motion for summary judgment. For the reasons stated below, the court denies Jones Frame's motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Park Place Corporation ("Park Place") builds and sells mattress foundations. (Pl.'s Mem. Opp'n Summ. J. Ex. A (Edwin Shoffner ("Shoffner") Aff. ¶ 3).) In connection with this business, Park Place purchases lumber from outside suppliers. (Id. Ex. A (Shoffner Aff. ¶ 3).) Park Place primarily uses spruce lumber to build mattress foundations. (Id. Ex. A (Shoffner Aff. ¶ 3).) However, Park Place uses southern pine lumber for "corner blocks" in the mattress foundations it builds. (Id. Ex. A (Shoffner Aff. ¶ 3).)

Jones Frame is a long-time supplier to Park Place of completed mattress foundations and lumber, including southern pine corner blocks for use in mattress foundations. (Id. Ex. B (Ralph Nagele ("Nagele") Aff. ¶ 3).) Park Place alleges that in or around November 2004, Jones Frame provided price quotes to Park Place for the provision of corner blocks in 2005. (Pl.'s Mem. Opp'n Summ. J. 2; Ex. B (Nagele Aff. ¶ 5).) Park Place alleges that it informed

1

Jones Frame it intended to use the corner blocks in mattress foundations and that Jones Frame represented that it would provide corner blocks that were suitable for this purpose. (Id. 2; Ex. B (Nagele Aff. ¶ 4).) Further, Park Place alleges that based upon Jones Frame's representations that the corner blocks it provided would meet commercially acceptable standards, it agreed to purchase corner blocks from Jones Frame in 2005. (Id. 2; Ex. B (Nagele Aff. ¶ 5).) Pursuant to this agreement, Park Place states that from January through March of 2005, Park Place purchased directly from Jones Frame more than $650,000 worth of product, which consisted largely of southern pine corner blocks and completed mattress foundations. (Id. 2; Ex. B (Nagele Aff. ¶ 6).)

In addition, in or around November 2004, Jones Frame introduced Park Place to Industries P.F., Inc. ("IPF"), a Canadian lumber company. (Id. 3; Def.'s Mem. Supp. Summ. J. 4.) Park Place alleges that Jones Frame indicated that IPF could meet Park Place's needs for spruce lumber. (Pl.'s Mem. Opp'n Summ. J. 3.) According to Park Place, Jones Frame agreed to serve as a liaison between Park Place and IPF, and based on these representations by Jones Frame, Park Place entered into a contract with IPF for the purchase of spruce lumber. (Id.)

In January 2005, Park Place began purchasing spruce lumber from IPF. Pursuant to the arrangement between the three companies, Park Place submitted purchase orders to Jones Frame for spruce lumber from IPF. (Id.; Def.'s Mem. Supp. Summ. J. 4.) Jones Frame faxed the purchase orders to IPF. (Pl.'s Mem. Opp'n Summ. J. 3; Def.'s Mem. Supp. Summ. J. 4.) IPF then shipped the spruce lumber directly to Park Place. (Pl.'s Mem. Opp'n Summ. J. 3; Def.'s Mem. Supp. Summ. J. 4.) In addition, Jones Frame warehoused a small

reserve of IPF's lumber in order to protect against the possibility of a delayed shipment of spruce lumber from IPF. (Pl.'s Mem. Opp'n Summ. J. 3; Def.'s Mem. Supp. Summ. J. 4.) For its role as liaison, Jones Frame was paid a five percent (5%) commission by IPF on every purchase order submitted by Park Place. (Pl.'s Mem. Opp'n Summ. J. 3; Def.'s Mem. Supp. Summ. J. 4.)

In or around January 2005, Park Place allegedly discovered that the corner blocks and mattress foundations received from Jones Frame had excessive moisture levels. (Pl.'s Mem. Opp'n Summ. J. Ex. B (Nagele Aff. ¶ 7).) In addition, Park Place submits that around the same time, Park Place began to notice excessive levels of moisture in the spruce lumber it received from IPF. (Id. 3.) Park Place alleges that in January 2005, it informed Jones Frame that the mattress foundations, corner blocks, and spruce lumber had excessive moisture content, and that Jones Frame assured Park Place that it would correct the problem. (Id. Ex. B (Nagele Aff. ¶ 7).)

Despite Jones Frame's assurances, Park Place alleges that it continued to receive corner blocks, mattress foundations, and spruce lumber with excessive moisture levels throughout February and March of 2005. (Id. Ex. B (Nagele Aff. ¶ 8).) During this time period, Jones Frame allegedly communicated continued complaints from Park Place to IPF, and responsive information, including assurances that the problems would be corrected, from IPF to Park Place. (Def.'s Mem. Supp. Summ. J. 5.) In addition, Jones Frame alleges that it advised Park Place to find an alternate lumber supplier if IPF could not fulfill Park Place's lumber needs. (Id.)

Eventually, Rick Hartley ("Hartley") of Jones Frame and Pierre Poulin ("Poulin") of IPF visited Park Place to discuss the moisture levels. (Pl.'s Mem. Opp'n Summ. J. Ex. B (Nagele Aff. ¶ 9).) During and after the visit, Jones Frame and IPF assured Park Place that the problems would be corrected, and that all the corner blocks and mattress foundations provided to Park Place in the future would have acceptable moisture levels. (Id. Ex. B (Nagele Aff. ¶ 9).)

Park Place alleges that in reliance upon the representations by Jones Frame and IPF that the corner blocks, mattress foundations, and spruce lumber would not have excessive moisture levels in the future, it continued to use future shipments of spruce lumber and corner blocks in the mattress foundations. During this time, Park Place's largest customer, Tempurpedic, Inc. ("Tempurpedic"), purchased completed mattress foundations from Park Place. (Id. Ex. B (Nagele Aff. ¶ 10).)

Park Place alleges that on April 5, 2005, and June 10, 2005, Tempurpedic sent claims to Park Place demanding the refund of $424,602.46 on the grounds that the lumber in the mattress foundations sold by Park Place contained excessive moisture levels. (Id. Ex. B (Nagele Aff. ¶ 10); Am. Compl. ¶¶ 18, 20).) After inspecting the rejected mattress foundations and confirming Tempurpedic's complaints, Park Place issued two credits to Tempurpedic totaling $211,947.68. (Pl.'s Mem. Opp'n Summ. J. 6; Ex. G (Park Place Credit Memos, generally).)

On March 13, 2006, Park Place filed the instant suit in the South Carolina Court of Common Pleas for the Thirteenth Circuit in Greenville, South Carolina. Jones Frame removed the case to this court on August 3, 2006.

In its complaint, Park Place states eight causes of action against Jones Frame and IPF (collectively "Defendants"), all concerning the spruce lumber, corner blocks, and mattress foundations with excessive moisture levels. First, Park Place claims that the Defendants breached their contracts "by, among other things, delivering lumber to Park Place which did not conform to the specifications in the purchase orders." (Am. Compl. ¶ 26.) Second, Park Place alleges that the Defendants' "breaches of contract were done with fraudulent intent, as evidenced by, among other things, Defendants' knowing provision of lumber with excessive moisture content . . . and their willful misrepresentations to Park Place that the moisture issues had been corrected." (Id. ¶ 32.)

Third, Park Place asserts a breach of the implied covenant of good faith and fair dealing claim on the grounds that the Defendants concealed the defective nature of the lumber from Park Place and misrepresented that the moisture problem had been corrected when they knew it had not. (Id. ¶ 38.) On the same grounds, Park Place asserts a claim pursuant to the Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, et seq. (Id. ¶¶ 41-19.)

Fifth, Park Place asserts a claim for negligent misrepresentation on the grounds that the "Defendants made explicit representations of fact to [Park Place] which [Park Place] subsequently determined were false." (Id. ¶ 51.) Finally, Park Place asserts claims for breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for particular purpose based on the condition of the lumber sold by the Defendants to Park Place. (Am. Compl. ¶¶ 58-78.)

On March 22, 2007, Jones Frame filed a motion for summary judgment. On April 12, 2007, Park Place filed a response to Jones Frame's motion for summary judgment. Jones Frame replied in support of its motion on April 27, 2007.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Moreover, "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). With respect to this burden, "it is the responsibility of the

6

plaintiff, not the court, to identify with particularity the evidentiary facts existing in the record which can oppose the defendant's summary judgment motion." Malina v. Baltimore Gas & Elec. Co., 18 F.Supp. 2d 596, 604 (D. Md. 1998).

### C. Jones Frame's Motion for Summary Judgment

#### 1. Contract and Warranty Claims

First, Jones Frame argues that no contract existed between Jones Frame and Park Place. (Def.'s Mem. Supp. Summ. J. 7.) Thus, Jones Frame contends that it is entitled to summary judgment on Park Place's claims that depend upon the existence of a contract, namely the claims for breach of contract, breach of contract with fraudulent intent, breach of good faith and fair dealing, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness. (Id. 7, 9.)

In support of its argument that no contract existed between Jones Frame and Park Place, Jones Frame contends that the evidence demonstrates that it merely acted as an agent for a disclosed principal, which was IPF. (Id. 7.) In response, Park Place contends that even if this were true regarding the spruce lumber provided by IPF, additional contracts existed between Jones Frame and Park Place for the sale of completed mattress foundations and southern pine corner blocks. (Pl.'s Mem. Opp'n Def.'s Mot. Summ J. 7.) Park Place states that "[i]t is these contracts for the provision of corner blocks and completed foundations that are the subject of Park Place's breach of contract claim against Jones Frame." (Id.) In addition, Park Place argues that "[w]ith regard to these contracts between Park Place and Jones Frame, it is clear that Park Place was the seller of the corner blocks and foundations, and therefore may be held liable on warranty theories." (Id. 10.)

7

In its reply, Jones Frame does not deny that it entered into contracts with Jones Frame to purchase corner blocks and mattress foundations. (Def.'s Reply Supp. Mot. Summ. J. 2.) However, Jones Frame argues that, as a matter of law, Park Place is bound by its admission in the amended complaint that "during the times relevant to this lawsuit, Jones Frame was an agent of IPF for IPF's provision of lumber to [Park Place] and was IPF's United States liaison with [Park Place]." (Id.)

Park Place states in the amended complaint that Jones Frame was an agent of IPF. (Am. Compl. ¶ 8.) However, it additionally states that "Jones Frame is a manufacturer and provider of lumber to the mattress industry," and that "[d]uring the times relevant to this lawsuit, Defendants were PPC's sole source of lumber for use in its wooden mattress foundations." (Id. ¶¶ 8, 9.) Further, Park Place states that it "purchased lumber from Defendants pursuant to a series of purchase orders in which [Park Place] specified the type and quantity of lumber desired." (Id. ¶ 11.)

"[I]t is true, as a general rule, that an admission in a pleading is taken as conclusive of the fact admitted." Elrod v. All, 134 S.E.2d 410, 416 (S.C. 1964). As described above, Park Place alleges in the amended complaint that it acted as an agent of IPF and that it purchased lumber from Jones Frame directly. These statements are not inconsistent, and Park Place's admission that it acted as an agent for IPF does not preclude its assertion that it also purchased lumber directly from Jones Frame. Therefore, this argument is without merit.

In the alternative, Jones Frame argues that it is entitled to summary judgment because Park Place has provided no evidence of rejection or of notification of nonconformance of the corner blocks and mattress foundations that Park Place alleges were defective. (Def.'s Reply

8

Supp. Summ. J. 3.) The court agrees that Park Place has submitted no evidence in support of a finding that it rejected the nonconforming goods it allegedly received from Jones Frame. The court finds that a factual dispute exists regarding whether Park Place reasonably notified Jones Frame that the corner blocks and mattress foundations it purchased were nonconforming.

S.C. Code Ann. § 36-2-714(1) states that "[w]here the buyer has accepted goods and given notification . . . he may recover as damages for any nonconformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable." Thus, "[a] buyer who has accepted non-conforming goods can, in limited circumstances, revoke acceptance, or he can recover damages for breach of warranty." Hitachi Elec. Devices (USA), Inc. v. Platinum Techs., Inc., 621 S.E.2d 38, 40 (S.C. 2005). "To revoke acceptance or recover damages, however, the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Id. (internal quotation marks omitted).

In his affidavit, Nagele, the plant superintendent in the manufacturing division of Park Place, states that Park Place "purchased more than $650,000 worth of product directly from Jones Frame" from January to March 2005. (Pl.'s Mem. Opp'n Mot. Summ. J. Ex. B (Nagele Aff. ¶ 6).) Nagele states that Park Place first notified Jones Frame in January 2005 that the mattress foundations and corner blocks purchased from Jones Frame had excessive moisture content. (Id. Ex. B (Nagele Aff. ¶ 7).) In addition, Nagele states that Hartley of Jones Frame visited Park Place to address the issue of excessive moisture levels in the corner blocks and completed foundations. (Id. Ex. B (Nagele Aff. ¶ 2).) Therefore, Park Place has

submitted evidence from which a trier of fact could find that it notified Jones Frame within a reasonable amount of time of the nonconformance of the goods purchased from Jones Frame. Based on the foregoing, Jones Frame's motion for summary judgment as to Park Place's breach of contract claim, breach of contract accompanied by a fraudulent act claim, breach of implied covenant of good faith claim, breach of express warranty claim, breach of implied warranty of merchantability, and breach of implied warranty of fitness claim is denied.

2.  Negligent Misrepresentation Claim

Jones Frame moves for summary judgment on Park Place's negligent misrepresentation claim, arguing that Park Place has failed to submit evidence sufficient to create a genuine issue of material fact as to each of the elements of a negligent misrepresentation claim. (Def.'s Mem. Supp. Summ. J. 11-12.)

In order to establish a claim for negligent misrepresentation, Park Place must prove the following elements:

> (1) the defendant made a false representation to the plaintiff,
> (2) the defendant had a pecuniary interest in making the statement,
> (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff,
> (4) the defendant breached that duty by failing to exercise due care,
> (5) the plaintiff justifiably relied on the representation, and
> (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance upon the representation.

Hurst v. Sandy, 494 S.E.2d 847, 852 (S.C. 1997).

With respect to the first element, Jones Frame contends that Park Place "does not allege, nor has it established, that Jones Frame had the contractual duty or the duty at law to inspect, bundle, or dry the lumber, because [Park Place] is aware of the fact that Jones Frame

10

had no such duty." (Def.'s Mem. Supp. Summ. J. 12.) In addition, Jones Frame argues that it was in no better position than Park Place to ascertain whether IPF was correcting the excessive moisture levels in the spruce lumber. (Def.'s Reply Supp. Summ. J. 7.) Finally, Jones Frame asserts that "actionable torts based on misrepresentation must relate to a present or pre-existing fact and cannot be predicated on statements as to future events." (Id.)

In response, Park Place cites AMA Management Corp. v. Strasburger for the proposition that "if the defendant has a pecuniary interest in making the statement and he possesses expertise or special knowledge that would ordinarily make it reasonable for another to rely on his judgment or ability to make careful enquiry, the law places on him a duty of care with respect to representations made to plaintiff." 420 S.E.2d 868, 874 (S.C. Ct. App. 1992). Park Place alleges that Jones Frame possessed "special knowledge" regarding IPF's ability to deliver conforming goods because of Jones Frame's role as liaison between IPF and Park Place. (Pl.'s Mem. Opp'n Summ. J. 15.)

The court finds that Park Place has put forth sufficient evidence to demonstrate that Jones Frame owed a duty of care to Park Place. It is undisputed that Jones Frame had a pecuniary interest in the lumber sales between IPF and Park Place, as Jones Frame received a five percent (5%) commission on every sale. (Pl.'s Mem. Opp'n Summ. J. 14-15; Def.'s Mem. Supp. Summ. J. 4.) In addition, in its position as liaison between Park Place and IPF, Jones Frame received information from IPF regarding the excessive moisture levels in the lumber that was otherwise unavailable to Park Place. (Pl.'s Mem. Opp'n Summ. J. Ex. D (Hartley Dep. 72-78).) Therefore, Jones Frame owed a duty of care to see that it communicated truthful information to Park Place. See Osborn v. Univ. Med. Assocs. of the

11

Med. Univ. of South Carolina, 278 F. Supp. 2d 720, 735 (D.S.C. 2003) ("A duty to exercise reasonable care in giving information exists when the defendant has a pecuniary interest in the transaction."); AMA Management Corp., 420 S.E.2d at 874.

In addition, Jones Frame argues it is entitled to summary judgment on the negligent misrepresentation claim because Park Place alleges that Jones Frame's representations were merely promises to perform in the future. (Def.'s Reply Supp. Summ. J. 7.) "To be actionable, the representation must relate to a present or pre-existing fact and be false when made." Fields v. Melrose Ltd. P'ship, 439 S.E.2d 283, 285 (S.C. Ct. App. 1993). "The representation cannot ordinarily be based on unfulfilled promises or statements as to future events." Id. "Under South Carolina law, . . . promises [to perform future acts] cannot form the basis of an action for fraudulent or negligent misrepresentation, unless . . . [the defendant] had no intention of doing what it promised at the time the promises were made." Tom Hughes Marine, Inc. v. American Honda Motor Co., 219 F.3d 321, 325 (4th Cir. 2000) (citing Woodward v. Todd, 240 S.E.2d 641, 642 (S.C. 1978)).

The evidence presented by Park Place demonstrates that after receiving complaints from Park Place regarding excessive moisture levels in the spruce lumber, Jones Frame repeatedly contacted IPF to address the problem. (Pl.'s Mem. Opp'n Summ. J. Ex. A (Hartley Dep. 72).) In response, IPF presented "various excuses" for the problem and assured Jones Frame that the problem would be resolved in the future. (Id. Ex. D (Hartley Dep. 77).) Park Place alleges that Jones Frame assured Park Place that the moisture level problems in future shipments of lumber from IPF would be resolved despite the fact that Jones Frame was concerned about recommending IPF to other customers and recognized or should

12

have recognized that IPF's explanations did not address the underlying cause of the moisture problems.  (Id. Ex. A (Shoffner Aff. ¶¶ 7-8); Ex. D (Hartley Dep. 72,77-78,118).)

In short, Park Place alleges that Jones Frame knew or should have known that IPF had no present intention to correct the excessive moisture levels in future shipments of spruce lumber to Park Place, and that IPF was not taking steps to correct the problem.  These representations, if true, addressed conditions as they existed at the time the representations were made.  Therefore, the court finds that Park Place has submitted sufficient evidence to create a material question of fact as to whether Jones Frame negligently misrepresented IPF's ability and intention to correct the excessive moisture levels in the spruce lumber it shipped to Park Place.  Based on the foregoing, Jones Frame's motion for summary judgment on Park Place's negligent misrepresentation claim is denied.

### 3.  South Carolina Unfair Trade Practices Act Claim

Finally, Jones Frame argues that it is entitled to summary judgment on Park Place's SCUTPA claim. "An action for damages may be brought under SCUTPA for unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" that proximately causes damages.  Camp v. Springs Mortgage Corp., 426 S.E.2d 304, 306 (S.C. 1993) (internal quotation marks omitted).  "A trade practice is 'unfair' when it is offensive to public policy or when it is immoral, unethical, or oppressive; a practice is 'deceptive' when it has a tendency to deceive." Young v. Century Lincoln-Mercury, Inc., 396 S.E.2d 105, 108 (S.C. Ct. App. 1989), aff'd in part, rev'd in part on other grounds, 422 S.E.2d 103 (S.C. 1992).

Park Place bases its SCUTPA claim on the allegations that Jones Frame assured Park Place that IPF would correct the excessive moisture levels in future shipments of lumber even though Jones Frame knew, or should have known, that IPF was in fact not taking steps to resolve the moisture problems. (Pl.'s Mem. Opp'n Summ. J. 19.) Jones Frame argues that there are no facts to support Park Place's SCUTPA claim. (Def.'s Mem. Supp. Summ. J. SCUTPA Claim 3.) However, for the same reasons as discussed with regard to the negligent misrepresentation claim, the court finds that Park Place has presented sufficient evidence to create a material question of fact as to whether Jones Frame made deceptive representations to Park Place regarding whether IPF would resolve the moisture problem.

In addition, Jones Frame argues that Park Place has offered no evidence that Jones Frame's actions adversely affected the public interest. (Id.); see Haley Nursery Co. v. Forrest, 381 S.E.2d 906, 908 (S.C. 1989) (holding that to be actionable under the SCUTPA, an unfair or deceptive act must have an impact upon the public). The court finds that Park Place has submitted sufficient evidence to create a question of fact with regard to whether "[a]n impact on the public interest may be shown if the acts or practices have the potential for repetition." Singleton v. Stokes Motors, Inc., 595 S.E.2d 461, 466 (S.C. 2004). Park Place has submitted evidence that Jones Frame repeated its allegedly deceptive conduct with other customers. (Pl.'s Mem. Opp'n Mot. Summ. J. Ex. H (Attys.' Eyes Only Portion Hartley Depo. 5, 7-8.) Park Place has submitted sufficient evidence from which a reasonable jury could find that Jones Frame's conduct affected the public interest. Singleton, 595 S.E.2d at 466 ("The potential for repetition may be shown in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur

absent deterrence; or (2) by showing the company's procedures created a potential for repetition of the unfair and deceptive acts.")  Based on the foregoing, Jones Frame's motion for summary judgment is denied.

It is therefore

**ORDERED** that Jones Frame's motion for summary judgment, docket number 22, is denied.

**IT IS SO ORDERED.**

                                                s/Henry M. Herlong, Jr.
                                                United States District Judge

Greenville, South Carolina
May 16, 2007